**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lee Ruth Woods-White, | No. CV-24-01405-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Lee Ruth Woods-White's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 8-3). The appeal is fully briefed (Doc. 11; Doc. 15; Doc. 16), and the Court now rules.

## I.    BACKGROUND

### A.    Factual Overview

Plaintiff was 47 years old on her alleged disability onset date of January 12, 2021. (Doc. 8-3 at 36). She at least a high school education. (*Id.*) On June 11, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (*Id.* at 18). Denial of Plaintiff's claim occurred initially on February 14, 2022, and upon reconsideration on December 3, 2022. (*Id.*) Plaintiff filed a written request for a hearing before an ALJ, which occurred by telephone on May 22, 2023. (*Id.*) An impartial vocational expert (VE) also appeared and testified in the hearing. (*Id.*) The ALJ issued a decision on July 13, 2023, finding that Plaintiff was not disabled under Section

1614(a)(3)(A) of the Social Security Act. (*Id.* at 38). On April 16, 2024, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted the ALJ's decision as final. (Doc. 11 at 2). Plaintiff filed the present appeal following this unfavorable decision. (*See generally* Doc. 1).

### B.    The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* §

404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

## C.    The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff did not engage in substantial gainful activity since January 12, 2021, the alleged onset date. (Doc. 8-3 at 20).

At Step Two, the ALJ determined Plaintiff had "severe" impairments including migraine and cervical spine disorders. (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 28). The ALJ then determined Plaintiff had the

RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b). (*Id.* at 29). Regarding Plaintiff's limitations, the ALJ identified the following:

> [Plaintiff] can frequently stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally climb ladders, or scaffolds. [Plaintiff] can frequently reach overhead, handle, finger, and feel. [Plaintiff] can occasionally be exposed to extremes in temperature and vibration. She can be exposed to moderate noise. The claimant can occasionally be exposed to concentrated dusts, odors, fumes, and pulmonary irritants.

(*Id.* at 29).

At Step Four, the ALJ established that Plaintiff was capable of performing past relevant work as an administrative clerk, a human resource clerk, and a recreation leader. (*Id.* at 29). At Step Five, the ALJ found that alternatively, Plaintiff could perform a significant number of jobs in the national economy given her age, education, work experience, and RFC. (*Id.* at 36). Representative jobs included Power Screwdriver Operator, Housekeeping Cleaner, and Merchandise Marker. (*Id.* at 37). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through July 13, 2023. (*Id.*)

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving

conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

Plaintiff's appeal raises two issues: (1) the ALJ's explanation lacks substantial evidence to support the rejection of Dr. Cibulka's assessment, including a failure to describe the consideration of supportability and consistency factors; and (2) the ALJ did not provide specific clear, convincing reasons, supported by substantial evidence, for his rejection of Plaintiff's subjective symptom testimony. (Doc. 11 at 14, 22). The Court considers each claim in turn.

### A.  Dr. Cibulka

Plaintiff argues that the ALJ committed harmful error by rejecting Dr. Cibulka's opinion without providing sufficient explanation supported by substantial evidence. Doc. 11 at 14). Defendant conversely asserts that "substantial evidence supports the ALJ's findings." (Doc. 15 at 2).

#### 1.  Legal Standard for Evaluation of Medical Opinions

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*,

*vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. (*Id.*) These regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how he considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Subsequently, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir 1992) ("if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ") (citations omitted).

### 2. The ALJ's Evaluation of Dr. Cibulka's Medical Opinion

Plaintiff claims that the ALJ erred in rejecting Dr. Cibulka's opinion because he failed to provide sufficient explanation supported by substantial evidence in the following ways: (1) the ALJ insufficiently using "normal findings" from other providers as evidence supporting rejection of Dr. Cibulka's assessment (Doc. 11 at 18); (2) he failed to consider improvement in Plaintiff's migraines and pain symptoms "in the context of the record as a whole" (*Id.* at 20); (3) in lieu of providing sufficient rationale for rejecting Dr. Cibulka's opinion, the ALJ improperly found two agency non-examining physicians' opinions to be "at least partially persuasive" (*Id.* at 21); (4) he inappropriately found Dr. Cibulka's opinion to be internally inconsistent (*Id.* at 20); and (5) he rejected the opinion because of its checkbox format and failed to consider Dr. Cibulka's own treatment notes in the supportability analysis (*Id.* at 16, 17).

Regarding Dr. Cibulka's assessment of Plaintiff, the ALJ wrote as follows:

> In an Attending Physician's Statement, dated February 2, 2023, Frank Cibulka, M.D.[,] opined, in part, that the claimant was totally disabled from regular occupation, totally disabled from any occupation, and he did not expect the claimant to ever return to full-time employment. He opined that the claimant could sit 4 hours a day, lift/carry 1–10 pounds, bend in moderation, and no crouching, kneeling, or squatting. (Exhibit 30F/1-2)[.] His opinion is found unpersuasive, as it is simply a checkbox style form completed for purposes outside of the Social Security disability process herein. He noted some largely illegible objective findings and made a comment at the

end of the form, but this was also generally illegible[,] but outside of this, he did not provide any supporting narrative or citation to specific medical documentation to support his opinion. Further, there [is] some internal inconsistency in the form, as he opined that he expected the claimant could never return to full-time work, yet in the very next page he indicated that the claimant's condition is stable, and he indicated that her condition was not permanent. (Exhibit 30F/1-2)[.] His opinion is not supported by the balance of objective physical exams, as discussed herein, which were generally normal. (Exhibits 5F/10, 16, 20; 6F/14, 36, 52; 10F/11; 11F/8; 14F/3-4; 15F/15, 30-31; 16F/10; 18F/18; 29F/60, 77)[.] In addition, his opinion is inconsistent with medical records that show the claimant's migraines improved with Botox and her physical symptoms improved overall after cervical spine surgery. (Exhibits 9F/2; 10F/10, 14, 22; 17F/18; 18F/7; 29F/2; 28F/81, 141, 233).

(Doc. 8-3 at 35).

As an initial matter, Plaintiff takes issue with the ALJ's statement above, "[Dr. Cibulka]'s opinion is not supported by the balance of objective physical exams, as discussed herein, which were generally normal." (Doc. 11 at 17). Plaintiff asserts, and the Court agrees, that despite the ALJ's wording, this statement applies to the ALJ's consistency analysis, not the supportability analysis, given that the records of "normal findings" to which the ALJ cites come from other providers and do not include Dr. Cibulka's own treatment notes.[1] (Exs. 5F/10, 16, 20; 6F/14, 36, 52; 10F/11; 11F/8; 14F/3-4; 15F/15, 30-31; 16F/10; 18F/18; 29F/60, 77); 20 C.F.R. § 404.1520c(c)(1) (regarding the

---

[1] Defendant counters that this statement from the ALJ does relate to the supportability analysis, because many of the medical records cited by the ALJ come from the HonorHealth Medical Group, to which Dr. Cibulka belongs, and to whose records he has access. (Doc. 15 at 4, n.2). Further, per Defendant, the ALJ specifically referenced one of Dr. Cibulka's treatment notes, located in Exhibit 29F/2. *Id.* (citing Doc. 8-3 at 35). However, upon review, it is unclear to the Court that the page in the record to which Defendant refers indeed contains any of Dr. Cibulka's treatment notes, because there are multiple treatment notes on that page for which there are no identifiable authors. (Ex. 29F/2). And although on the prior page, Dr. Cibulka is listed as Plaintiff's primary care physician, it also lists another physician as her neurologist, and it does not identify either physician as the author of the notes on the page Defendant references. (Ex. 29F/1). Further, although Dr. Cibulka may have had access to treatment notes from HonorHealth, he did not himself write them, nor is there evidence that he was present for the sessions from which the notes originated. Thus, the Court maintains its agreement with Plaintiff's assertion that the ALJ's statement relates to his consistency analysis.

supportability factor: "The more relevant objective medical evidence and supporting explanations *presented by a medical source* are to support his … medical opinions … the more persuasive the medical opinions … will be) (emphasis added).

Plaintiff states that these "normal findings" from other providers did not suffice as substantial evidence of inconsistency warranting rejection of Dr. Cibulka's assessment, "[considering] Plaintiff's primary impairments were chronic pain and migraines." (Doc. 11 at 18). Specifically, Plaintiff argues that these treatment notes contain objective evidence, such as normal imaging scans, for example, which Plaintiff states are not appropriate for measuring migraine severity. (*Id.*) Plaintiff also indicates that the reports of other measures cited by the ALJ, such as normal range of motion, gait, and strength, are not mutually exclusive with severe pain. (*See id.* at 18–19). Further, Plaintiff alleges that the ALJ failed to explain how these "normal findings" were inconsistent with "any of Dr. Cibulka's specific assessed limitations." (*Id.* at 19).

However, Plaintiff's latter argument implies that the ALJ was not indicating that the above "normal findings" were inconsistent with Plaintiff's chronic pain and migraines; rather, he was highlighting these results as inconsistent with Dr. Cibulka's opined limitations. The Court acknowledges that the ALJ's explanation of this inconsistency could have been clearer. Nonetheless, the ALJ cited sufficient evidence in the record and portions of Dr. Cibulka's opinion to allow the Court to reasonably discern his path and determine that his conclusions are supported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less[-]than[-] ] ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up). It is understandable why the ALJ found results describing normal imaging and normal range of motion and strength in the upper and lower extremities to be inconsistent with Dr. Cibulka's opinions that Plaintiff could "lift/carry 10 pounds, bend in moderation[,] and no crouching, kneeling[,] or squatting. (Exhibit 30F/1–2)," and that Plaintiff is "totally disabled," both of which the ALJ specifically identified. (Doc. 8-3 at 35). As such, the ALJ provided "relevant evidence as a reasonable mind might accept as

adequate to support his conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

In addition, Plaintiff argues that the ALJ "failed to consider any reports of limited improvement in the broader context of [Plaintiff's] impairments and the record" when he discounted Dr. Cibulka's assessment for its inconsistency with records showing improvement in Plaintiff's migraines with Botox injections and with records demonstrating improvement in her physical symptoms following cervical spine surgery. (Doc. 11 at 20). Plaintiff states that the record showed that she continued to have "migraines at a disabling rate" even with Botox and other treatment. (*Id.*) Further, Plaintiff asserts that her "improvement overall after cervical spine surgery" does not account for "her ongoing and worsening upper extremity/hand symptoms." (*Id.* at 21).

However, the Court disagrees with Plaintiff. In his assessment of Dr. Cibulka's opinion, shown above, the ALJ highlights multiple items of evidence in the record demonstrating improvement in Plaintiff's migraines and physical symptoms as inconsistent with Dr. Cibulka's opinion that Plaintiff's condition was stable and that could never return to full-time work. (Doc. 8-3 at 35). But elsewhere in his decision, the ALJ also highlights evidence in Plaintiff's medical record that demonstrates Plaintiff continued to have migraines after Botox and other treatment, and adverse upper extremity and hand symptoms following cervical spine surgery. For example, regarding Plaintiff's migraines, the ALJ wrote: "A January 13, 2022, report indicates [Plaintiff] still has migraines but 'Aimovig has helped her significantly.' (Exhibit 10F/17)" (*Id.* at 30); "A March 24, 2022, report indicates [Plaintiff's] migraine problem has been 'waxing and waning.' (Exhibit 11F/4)" (*Id.* at 31); and "A report dated October 5, 2022, indicates, 'please note that with Botox treatment for chronic migraines, patient reports a reduction in migraine headaches by at least 50–65%. Severity of episodes also diminished.' (Exhibit 17F/18)" (*Id.* at 31) (revealing that while Botox resulted in improvement, Plaintiff still experienced migraines). Further, regarding Plaintiff's physical symptoms following her November 17, 2021, cervical spine surgery (*Id.* at 32), the ALJ wrote: "[Plaintiff] reported slight numbness [and] tingling in the right hand. (Exhibit 10F/22)" (*Id.* at 33); "On April 28, 2022, [Plaintiff] had

1   arthragias in the hands maximally. (Exhibit 15F/55)" (*Id.* at 33); and "A January 31, 2023,

2   report indicates that … [Plaintiff's] wrist and hand symptoms persisted…. (Exhibit

3   18F/18)" (*Id.* at 33).

4       Thus, in acknowledging both improvement in and persistence of Plaintiff's

5   symptoms, the ALJ properly considered instances of improvement "in context of the

6   overall diagnostic picture." *Ghanim v. Colvin*, 763 F.3d 1154, 112 (9th Cir. 2014). In effect,

7   the ALJ properly evaluated the record as a whole and reasonably concluded that evidence

8   of improvement in Plaintiff's migraines and physical symptoms following treatment was

9   inconsistent with Dr. Cibulka's opinion that Plaintiff's condition was stable and that she

10  could never return to full-time work. (Doc. 8-3 at 35). As discussed previously, the ALJ,

11  not the reviewing court, is responsible for resolving ambiguities and conflicts in medical

12  testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the

13  evidence of record could result in more than one rational interpretation, "the ALJ's decision

14  should be upheld." *Orn*, 495 F.3d at 630; *see also Matney*, 981 F.2d at 1019 ("if the

15  evidence can support either outcome, the Court may not substitute its judgment for that of

16  the ALJ") (citations omitted).

17      Plaintiff also suggests the ALJ erred because, in lieu of providing sufficient rationale

18  for rejecting Dr. Cibulka's opinion, the ALJ improperly found agency non-examining

19  physicians Drs. Gerrish and Madera-Ruiz's opinions to be "at least partially persuasive" in

20  that they "supported the non-disability decision." (Doc. 11 at 21). However, this argument

21  is without merit. First, the ALJ found the persuasiveness of Dr. Madera-Ruiz's opinion to

22  be rooted not in its support of "the non-disability decision," but in its consistency with

23  Plaintiff's "cervical spine impairment history status post[-]surgery, and [her] migraine

24  history as well as subjective complaints of arm/hand pain." (Doc. 8-3 at 35). This

25  consistency between Dr. Madera-Ruiz's opinion and Plaintiff's medical record serves as

26  substantial evidence to support a finding of persuasiveness, just as the inconsistency

27  between Dr. Cibulka's opinion and the same evidence served as substantial evidence to

28  find his opinion unpersuasive, as the Court concluded above. Second, although the ALJ

found that Dr. Gerrish's opinion was "partially persuasive insofar as it supports the non-disability decision herein," the ALJ also found that Plaintiff was more limited than Dr. Gerrish opined. (Doc. 8-3 at 35) ("[T]he residual functional capacity herein is more restrictive [than Dr. Gerrish found in her assessment,] considering [Plaintiff's] cervical spine impairment history status[-]post-surgery, and [Plaintiff's] migraine history as well as subjective complaints of arm/hand pain."). As such, any error on the part of the ALJ in finding Dr. Gerrish's opinion "partially persuasive" is harmless. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted) (indicating an error is harmless if it is "inconsequential to the ultimate non[-]disability determination.").

Plaintiff additionally claims that the ALJ erred in finding Dr. Cibulka's opinion to be internally inconsistent, and therefore, unpersuasive. (Doc. 11 at 15). The ALJ stated that there was "some internal inconsistency in [Dr. Cibulka's] form, as he opined that he expected the claimant could never return to full-time work, yet in the very next page he indicated that [Plaintiff's] condition is stable, and he indicated that her condition was not permanent. (Exhibit 30F/1–2)." (Doc. 8-3 at 35). Plaintiff states that "the ALJ manufactured an inconsistency where one does not exist," stating that this Court has previously indicated that "a condition can be stable but disabling." (Doc. 11 at 15) (quoting *Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. Mar. 27, 2008)). However, Plaintiff cites no such evidence to indicate that a "non-permanent" condition is not inconsistent with an inability to ever return to work. In the Court's view, it is reasonable for the ALJ to find Dr. Cibulka's opinion that Plaintiff's condition was not permanent to be inconsistent with his opinion that she could never return to work. *See Matney*, 981 F.2d at 1019 ("if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ"). Thus, this internal inconsistency is a valid reason for the ALJ to reject Dr. Cibulka's opinion. *Erasun v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08297-PCT-DWL, 2022 WL 620949, *5 (D. Ariz. Mar. 3, 2022) ("[T]he Ninth Circuit has … remarked that internal inconsistency between a physician's own … opinions is [a valid] reason to reject [a medical] opinion.") (citation omitted).

Finally, Plaintiff also argues that the ALJ erred in his supportability analysis because he rejected Dr. Cibulka's opinion due to its checkbox format and because he failed to consider Dr. Cibulka's own treatment notes. (Doc. 11 at 16, 17). However, as discussed above, the Court has concluded that substantial evidence supports the ALJ's decision to reject Dr. Cibulka's opinion on the basis of inconsistency with the medical record and within his own opinion. This alone suffices for the ALJ to conclude that Dr. Cibulka's opinion was unpersuasive. *See Woods*, 32 F.4th at 792–94, n.4 (indicating that even where an ALJ provides no supportability analysis for a medical opinion, the ALJ may properly find the opinion unpersuasive so long as there is an inconsistency finding supported by substantial evidence); *see also Thompson v. Comm'r of Soc. Sec. Admin.*, No. 21-08076-PHX-SPL, 2022 WL 3098039, *6 (D. Ariz. Aug. 4, 2022) ("Even though the ALJ erred in his consideration of supportability, he properly rejected the opinion based on consistency."). Accordingly, because it would be ultimately inconsequential to the non-disability determination, any error on the part of the ALJ in addressing the supportability factor for Dr. Cibulka's opinion is harmless, warranting no reversal. *Ford*, 950 F.3d at 1154; *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (stating a district court "may not reverse an ALJ's decision on account of a harmless error.")).

### 3. Plaintiff's Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting Plaintiff's subjective symptom testimony "in the absence of specific, clear, convincing reasons supported by substantial record as a whole." (Doc. 11 at 22). Conversely, Defendant argues that the ALJ properly discounted Plaintiff's subjective symptom testimony, "noting a lack of objective evidence to support her allegations, improvement with treatment, and Plaintiff's activities during the relevant period." (Doc. 15 at 6).

### 1. Legal Standard for Evaluating Subjective Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, "the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). Next, if the claimant satisfies the first test, then "the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation and quotations marks omitted). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, in his written decision, the ALJ summarized Plaintiff's subjective symptom testimony, paraphrasing as follows:

> In a Disability Report, the claimant alleged migraine headache, constant fatigue, constant pain in the left shoulder and neck, anxiety, and heart pain and heavy chest pain limit her ability to work. (Exhibit 3E/2)[.]
>
> During the hearing, the claimant testified in pertinent part as follows. She is 49 years old. She is 5 feet 8 inches tall and approximately 195 to 200 pounds. She is right-handed. She has a driver's license and drives only to her appointments. She is married and lives with her husband, her 9-year-old son, 21-year-old son, her 30-year-old daughter, and her 7-year-old grandson. She lives in a one[-]level single family home. She graduated [from] high school and took some classes in college but no degree. She does not work now and has not worked in 2[-]and a[-]half years. She noted that the main two medical conditions that prevent her from working are her chronic migraines, and right wrist weakness and pain. She noted diagnosis of small fiber neuropathy. She reported having depression and anxiety and "sensory overload[."] She noted having stiffness, swelling[,] and pain in her hands. She reported being unable to walk far distances or long period of time. She reported having 15 migraines a month. She alleged

having problems with memory and concentration. She noted that her hand strength is getting worse.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant's migraine disorder has been considered herein. However, the alleged severity of her migraines is not entirely supported by the record. The claimant testified 15 migraines per month. However, she also testified only going to urgent care due to migraines only once every three to four months. The claimant testified taking medications for migraines and when asked if these helped, she replied, "sometimes they do, sometimes they don't[."] She testified that she is trying Botox right now and is on her third appointment for injections. As noted below, the record generally shows the claimant has obtained benefit from Botox treatment....

The claimant reported constant fatigue. The record does reflect some complaints of fatigue. However, a May 6, 2021, progress note indicates that fatigue since Covid 'greatly improved[.'] (Exhibit 5F/12)[.] Overall, there are sporadic complaints of fatigue in the record, and while fatigue has been considered in limiting the claimant's residual functional capacity, there is not enough evidence to support limitations secondary to fatigue beyond those established herein.

The claimant alleged having problems [with] memory and concentration; however, as discussed, her attention, concentration, and memory were grossly intact in general. (Exhibit 17F/19, 23, 31, 34, 39, 46, 49, 52, 61)[.]

(Doc. 8-3 at 29, 30, 34).

As noted above, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms and did not make a finding

that she was malingering. (*Id.* at 30). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "not entirely consistent" with medical and other evidence in the record and consequently found her less limited than she had alleged. (*Id.*) Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Factors an ALJ may consider when determining credibility include, among others, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). An ALJ may "discredit the claimant's allegations" so long as the ALJ "makes specific findings that are supported by the record." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (cleaned up). The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

## 2.  The ALJ's Evaluation of Plaintiff's Symptom Testimony

Plaintiff claims that the ALJ erred in rejecting Plaintiff's symptom testimony because he failed to provide specific, clear and convincing reasons for doing so—specifically, he allegedly: (1) merely summarized medical evidence without connecting "anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] testimony" (Doc. 11 at 23); (2) failed to consider any improvement in Plaintiff's migraines and pain symptoms "in the context of the record as a whole" (*Id.* at 23); (3) failed to explain how normal findings in the medical record "canceled out the significance" of abnormal findings that were consistent with Plaintiff's symptom testimony

(*Id.* at 24); and (4) inappropriately "discounted [Plaintiff's] symptom testimony based on a perceived inconsistency with [Plaintiff's] daily activities." (*Id.* at 24).

First, Plaintiff argues that the ALJ failed to connect "anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] testimony." (*Id.* at 23). However, the Court disagrees. In multiple instances, the ALJ pointed to specific testimony provided by Plaintiff and demonstrated that he did not find the testimony credible by linking it to specific contradictory evidence in the medical record. For example: "The claimant reported constant fatigue. The record does reflect some complaints of fatigue. However, a May 6, 2021, progress note indicates that fatigue since Covid 'greatly improved.' (Exhibit 5F/12)." (Doc. 8-3 at 34). As an additional example, the ALJ stated: "The claimant alleged having problems [with] memory and concentration; however, as discussed, her attention, concentration, and memory were grossly intact in general. (Exhibit[s] 17F/19, 23, 31, 34, 39, 46, 49, 52, 61)." (*Id.*)

Moreover, in instances where the ALJ linked specific evidence to contrasting testimony with less specificity, the Court finds it was able to reasonably discern the ALJ's reasoning. To illustrate, in a paragraph describing Plaintiff's migraine symptom testimony, the ALJ highlighted Plaintiff's testimony regarding the current frequency with which she experiences migraines. (*Id.* at 30). Directly below this paragraph, the ALJ discusses evidence regarding the frequency, severity, and effectiveness of treatment of Plaintiff's migraines, including: "A February 25, 2021, report reveals migraines were still bothering her twice a week." (*Id.*); "An October 10, 2022, report indicates, 'she got Botox [last] week, and has not experienced migraines yet.'" (*Id.* at 31). This evidence is inconsistent with Plaintiff's testimony that she experiences "15 migraines per month." (*Id.* at 30). Thus, the Court concludes that in this regard, the ALJ did not err. *See Alaska Dept. of Env't. Conservation v. E.P.A.*, 540 U.S. 461, 497 (stating that if an ALJ's decision is made with "less[-]than[-]ideal clarity, a reviewing court will not upset the decision on that account if his path may reasonably be discerned."); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (applying this standard to Social Security). Therefore, the inconsistency

between the Plaintiff's testimony and the medical record serves as substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Next, Plaintiff claims that the ALJ erred in rejecting Plaintiff's symptom testimony, "again with [the] belief that Plaintiff obtained benefit from Botox treatment," because he failed to consider Plaintiff's improvement "in the context of the record as a whole," which showed Plaintiff's "migraine and pain symptoms persisted despite treatment, including Botox injections." (Doc. 11 at 23). However, as the Court concluded above, the ALJ highlighted both evidence of improvement and persistence in Plaintiff's migraines and physical symptoms following treatment. *Supra* Section III.A.2. As such, it is evident that the ALJ properly considered Plaintiff's symptom improvement following treatment "in context of the overall diagnostic picture." *Ghanim*, 763 F.3d at 1162. In effect, the evidence the ALJ highlighted, which shows improvement in migraine and pain symptoms following treatment, constitutes a specific, clear, and convincing reason to discredit Plaintiff's symptom testimony. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d, 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity).

Further, the relevant question here, in the Court's consideration of the ALJ's decision, is whether the ALJ's sufficiently supported his finding that the objective medical evidence does not support the severity of symptoms—including migraines and pain—to which the Plaintiff testified. *See Traub v. Comm'r of Soc. Sec. Admin.*, No. CV-21-02027-PHX-GMS, 2023 WL 3244215, *5 (D. Ariz. May 4, 2023) (indicating, in a similar scenario, that this is the relevant question, rather than whether the ALJ supported his finding with evidence showing a claimant's symptoms were completely controlled by treatment). Thus, even if Plaintiff is correct in her assertion that the record shows that Botox

and other treatments did not fully control her migraines or pain, the medical records concerning these treatments, to which the ALJ cited, undermine the reported severity of Plaintiff's symptoms.

For example, the ALJ cited to multiple pieces of evidence in the medical record demonstrating that Botox treatment temporarily reduced, or at times eliminated, Plaintiff's migraines, such ase: "A report dated October 5, 2022, indicates, 'please note that with Botox treatment for chronic migraines, patient reports a reduction in migraine headaches by at least 50-65%. Severity of episodes also diminished[.]' (Exhibit 28F/233)" (Doc. 8-3 at 31); "An October 10, 2022, report indicates, 'she got Botox [last] week and has not experienced migraines yet. Patient states she feels better than she did 6 months or a year ago[.'] (Exhibit 17F/18)" (*Id.*); "On January 10, 2023, she reported [the] second round of Botox for migraines has been more helpful. (Exhibit 28F/141)" (*Id.*); and "On March 22, 2023, the claimant reported no adverse reaction from the last Botox injections and that the injections continue to provide significant benefit in reduction of migraine burden. (Exhibit 18F/7; 28F/81)." (*Id.*) Similarly, the ALJ cited evidence from the medical record revealing improvement in Plaintiff's neck and shoulder pain following her November 17, 2021, cervical spine surgery—for example: "On March 15, 2022, the … report indicates that [Plaintiff's] neck pain and arm pain is gone and overall, her quality of life is much improved. (Exhibit 10F/10)" (*Id.*); "An encounter dated December 29, 2022, indicates the claimant 'appears to be doing very well after ACDF surgery' and 'the neck pain and the arm pain that she had prior to surgery have completely resolved.' (Exhibit 29F/2)" (*Id.*); and "A January 31, 2023, report indicates that her spine surgery provided relief of her pain particularly in the neck and shoulder region…. (Exhibit 18F/18)." (*Id.*)

The Court acknowledges that this evidence of record does not show that Plaintiff was pain-free following Botox treatments or cervical spine surgery, nor that Botox completely or permanently eliminated Plaintiff's migraines. Nonetheless, the evidence does demonstrate that during the timeframe at issue, there were periods of time where Botox treatments resulted in Plaintiff's migraines either subsiding or lessening in severity,

as did cervical spine surgery for Plaintiff's shoulder and neck pain. However, in contrast to this evidence, at the administrative hearing, Plaintiff testified that her migraines were chronic and that she experienced 15 migraines a month, and in a disability report, she stated that she had constant pain in her left shoulder and neck. (*Id.* at 30). This is substantial evidence to support the ALJ's conclusion that Plaintiff's testimony regarding the severity of her symptoms was not entirely consistent with the medical record. *See Carmickle*, 533 F.3d at 1161 (stating an ALJ may reject a claimant's subjective testimony based on contradiction with the medical record).

Plaintiff also assets that the ALJ failed to explain how normal physical examination findings "canceled out the significance" of other abnormal physical findings that "were consistent with Plaintiff's symptom testimony concerning chronic pain and migraines." (Doc. 11 at 24). However, the ALJ was not required to do so; instead, the ALJ was required to identify what parts of Plaintiff's testimony are "not credible and what evidence undermines the claimant's complaints." *Ghanim*, 763 F.3d at 1163. Furthermore, the ALJ did not conclude that any abnormal clinical finding was "canceled out" or rendered insignificant. (*See generally* Doc. 8-3). Rather, as the Court has concluded above, the ALJ properly weighed the medical evidence—including both normal and abnormal physical examination findings—as a whole in making his credibility and RFC determinations. *See Maneri v. Comm'r of Soc. Sec. Admin.*, No. CV-23-08054-PCT-DGC, 2024 WL 413547, *10–11 (D. Ariz. Feb. 5, 2024) (quoting *Fuentes v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00147-PHX-JJT, 2023 WL 5013109, *4 (D. Ariz. Aug. 7, 2023) (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("Plaintiff argues that the ALJ erred by failing to specifically discuss why the cited [abnormal] findings 'cancelled out' other [supportive] findings. However, 'the ALJ does not need to discuss every piece of evidence.' Instead, the ALJ was required to explain why he found [the physician's] assessments inconsistent with the other medical evidence in a manner supported by substantial evidence, which he did.")).

Plaintiff further asserts that the ALJ inappropriately "discounted [Plaintiff's]

symptom testimony based on a perceived inconsistency with [Plaintiff's] daily activities." (Doc. 11 at 24). Defendant counters that the ALJ "properly cited [Plaintiff's] daily activities to reject her claims of totally debilitating impairments." (Doc. 15 at 9). However, here, the Court disagrees with both parties. Prior to describing Plaintiff's daily activities in his written decision, the ALJ wrote: "The claimant's activity is fairly neutral and neither supportive of disability nor non-disability per se." (Doc. 8-3 at 34). At no point in his decision did the ALJ indicate that Plaintiff's daily activities were inconsistent or consistent with her testimony. (*See generally id.*). As such, in the Court's estimation, the ALJ neither discounted nor credited Plaintiff's symptom testimony on the basis of her daily activities.

Based on the above, the Court concludes that the ALJ provided more than one clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony. Therefore, any potential error the ALJ otherwise made in rejecting Plaintiff's testimony is rendered harmless. *See Carmickle*, 533 F.3d at 1162 (indicating that if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

### 3.  Additional Proceedings

Finally, Plaintiff requests remand for calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 11 at 25). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of benefits").

/ / /

/ / /

/ / /

/ / /

## IV.    CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the ALJ's opinion is AFFIRMED, and the Clerk of the Court shall enter judgment accordingly.

Dated this 29th day of January, 2025.

James A. Teilborg
Senior United States District Judge